IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN

SOBEIDA ROSMIRA DURAN
SEGOVIA,

            Petitioner

     vs.

KURT WOLFORD, IN HIS OFFICIAL
CAPACITY AS WARDEN OF
CAMBRIA COUNTY PRISON, *et al.*,

           Respondents

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 3:25-CV-00485

STEPHANIE L. HAINES
United States District Judge

RICHARD A. LANZILLO
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
ON AMENDED PETITION FOR WRIT
OF HABEAS CORPUS

ECF NO. 20

I.     RECOMMENDATION

The pending petition for a writ of habeas corpus is before the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636. For the reasons stated herein, it is respectfully recommended that the petition be DISMISSED without prejudice.

II.    REPORT

A.    Relevant Procedural and Factual History

Petitioner Sobeida Rosmira Duran Segovia ("Petitioner") is a citizen and native of Venezuela. On July 25, 2024, Petitioner entered the United States at a port of entry and presented herself for a CBP One appointment to apply for admission. ECF No. 3 at 7. She was granted humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Her parole period was not scheduled to expire until July 24, 2026, but

in April 2025, the Department of Homeland Security ("DHS") terminated her parole status through a broadly issued notice directed to CBP One parolees.    Following that termination, Petitioner was placed in removal proceedings.  Petitioner has been in DHS  custody since October 28, 2025, following a traffic stop in Muncy, Pennsylvania.  She is currently detained at the Cambria County Prison in Ebensburg, Pennsylvania.

On January 29, 2026, an Immigration Judge denied Petitioner's applications for relief and ordered her removed to Ecuador, per a special agreement with that country.  *See* ECF No. 23-1.  Petitioner appealed the Immigration Judge's order to the Board of Immigration Appeals ("BIA"), but the BIA dismissed Petitioner's appeal as untimely on April 14, 2026.  *See* ECF No. 23-2.  Upon dismissal of her appeal, her removal order became final and triggered the mandatory detention provision of 8 U.S.C. § 1231.

On May 7, 2026, Petitioner filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF No. 20.  Respondents filed a response to the Amended Petition on May 14, 2026.

B.    Discussion

The general habeas statute, 28 U.S.C. § 2241, confers jurisdiction on this Court to hear both statutory and constitutional challenges to Petitioner's detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).  The statute authorizes the Court to grant a writ of habeas corpus to a person held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Gonzalez v. Oddo*,

2

2026 WL 1361429, at *2 (W.D. Pa. May 15, 2026). Petitioner asserts that her ongoing detention by DHS violates her due process rights under the Fifth Amendment to the Constitution.

The Supreme Court's decision in *Zadvydas* addresses the permissible duration of post-removal-order detention. When an alien is ordered removed, Section 241(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a), directs the Attorney General to effect removal within ninety days. During this "removal period," detention is mandatory. 8 U.S.C. § 1231(a)(2). The removal period commences on the latest of: (1) the date the order of removal becomes administratively final; (2) the date of the final judicial order of review, if applicable; or (3) the date the alien is released from non-immigration confinement. 8 U.S.C. § 1231(a)(1)(B). Section 241(a)(6) provides that certain aliens who have been ordered removed, including inadmissible and criminal noncitizens or noncitizens whom the Attorney General has determined are a risk to the community or are unlikely to comply with the order of removal, "*may be* detained beyond the removal period[.]" 8 U.S.C. § 1231(a)(6) (emphasis supplied). But this authority to detain beyond the removal period is limited by the Due Process Clause of the Fifth Amendment, U.S.C.A. Const. Amend. 5.

In *Zadvydas*, the Supreme Court held that "indefinite detention of aliens" under Section 241(a)(6) "would raise serious constitutional concerns...". *Id.* at 682. The Court therefore "construed the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* "[F]or the

sake of uniform administration in the federal courts," the Court found that post-removal-order detention of six months was "presumptively reasonable" but that detention beyond six months becomes unreasonable and unauthorized "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and the Government fails to "respond with evidence sufficient to rebut that showing." *Id.* at 701. The Court emphasized that the six-month presumption period did not mean that every alien detained and not removed during that period is entitled to release. *Id.* "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* But what may be considered a "significant likelihood of removal in the reasonably foreseeable future" "shrink[s]" as "the period of postremoval period grows." *Id.*

The presumption of unreasonable detention under *Zadvydas* arises only after the six-month post-final-removal-order period has elapsed, and only upon a petitioner's showing of no significant likelihood of removal in the reasonably foreseeable future. Only when these requirements are satisfied does the burden shift to the government to produce evidence to show a likelihood of removal in the reasonably foreseeable future. *Id.* The removal period as to Petitioner commenced on April 14, 2026, the date upon which the BIA dismissed Petitioner's appeal and her removal order became administratively final. *See* 8 U.S.C. § 1231(a)(1)(B). The mandatory ninety-day removal period therefore runs until July 13, 2026. If measured from the date the removal order became administratively final, the

4

presumptively reasonable six-month detention period under *Zadvydas* will not expire until October 14, 2026. *See* ECF No. 23-2, p. 4. Courts have found that a petition brought before the six-month period has elapsed is premature and subject to dismissal. *See, e.g., Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (per *curium*) (holding that the six-month period must have elapsed at the time the petition is filed for a *Zadvydas* claim to be cognizable); *Keita v. Sabol*, Civil No. 1:CV–11–248, 2011 WL 1375052 at *2 (M.D. Pa. 2011) ("A petition filed before the expiration date of the presumptively reasonable six months of detention [prescribed by *Zadvydas*] is properly dismissed as premature.") (citing *Akinwale*); *Van Phan v. Oddo*, 2026 WL 60337, at *2 (W.D. Pa. Jan. 8, 2026) (challenge to detention premature where petitioner's detention was still within the 90-day mandatory detention period).

In this case, however, DHS has detained Petitioner since October 28, 2025, more than seven months. DHS initially detained Petitioner on October 28, 2025, pursuant to Section 236 of the INA, 8 U.S.C. § 1226. Its authority to detain Petitioner under that statute continued until April 14, 2026, when Petitioner's order of removal became final and she became subject to mandatory detention under Section 241(a) of the INA, 8 U.S.C. § 1231(a). In assessing whether a due process violation has occurred, some federal courts have found that a petitioner's pre-final-removal-order period of detention should be aggregated with the petitioner's post-final-removal-order detention. *See Doe v. Becerra,* 697 F. Supp. 3d 937, 943-945 (N.D. Cal. 2023) (applying aggregation and reasoning that "[w]hile statutory justification for [petitioner's] detention has shifted, nothing has changed as a practical matter – his

5

time behind bars continues to increase without any showing by Respondents that his civil detention is necessary to achieve the Government's non-punitive ends"); *Marjanjou v. Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-01580-DC-EFB (HC), 2026 WL 925943, at *4 (E.D. Cal. Apr. 6, 2026) (same) *Chantha v. Warden*, No. 1:26-CV-01052-DJC-SCR, 2026 WL 925995, at *4 (E.D. Cal. Apr. 6, 2026), *report and recommendation adopted*, No. 1:26-CV-01052-DJC-SCR, 2026 WL 1147960 (E.D. Cal. Apr. 28, 2026); *Rodriguez v. Warden of Mesa Verde Det. Facility*, No. 1:25-CV-01680-TLN-CKD, 2026 WL 599141, at *2 (E.D. Cal. Mar. 3, 2026); *cf. Quizhpemacas v. Warden*, No. 1:26-CV-03046-DJC-EFB (HC), 2026 WL 1506814, at *4 (E.D. Cal. May 29, 2026) (recognizing aggregation as "a cognizable theory" but finding that even if periods of detention were aggregated they did not exceed the six-month *Zadvydas* threshold). If Petitioner's prior 168 days of detention under Section 236 are aggregated with her post-final-removal-order detention, her detention will have exceeded the six-month *Zadvydas* threshold.

No court in this Circuit has addressed whether aggregation of periods of detention under Section 236 and Section 241(a) is appropriate in the due process analysis. But case law specifically recognizes that the statutory justification for detention is directly relevant to the due process analysis. *See Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 n. 11 (3d Cir. 2011) (recognizing that detention becomes unconstitutional when it continues for "an unreasonable length of time without further individualized inquiry into whether *detention is necessary to carry out the purposes of the statute*") (emphasis supplied), *abrogated in part by Jennings v.*

6

*Rodriguez*, 583 U.S. 281 (2018). Noncitizens detained under Section 236 are entitled to a bond hearing before an Immigration Judge at any time before entry of a final removal order. No such right exists once a final order of removal is entered and Section 241(a) applies. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022). At that point, the statute mandates detention for the 90-day removal period. And under *Zadvydas*, such detention may continue beyond the removal period for an additional three months and until "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The six-month presumption of reasonable detention recognized in *Zadvydas* thus limits "an alien's post-removal-period detention to a period *reasonably necessary to bring about the alien's removal from the United States.*" *Id.* at 689 (emphasis supplied). This is the balance the Supreme Court struck in *Zadvydas* between the liberty interest of an alien detainee subject to a final removal order and the Government's statutory reason for detention. It is a balance that leaves little room for consideration of pre-removal-order periods of detention.

Nevertheless, even if Petitioner's pre-removal order detention were to be considered, she still would not satisfy the requirements for release under *Zadvydas*. Although her aggregated detention exceeds six months, she has not demonstrated good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents have proffered Ecuador's willingness to accept Petitioner under an agreement with that country, and the record includes no

evidence to support that Petitioner's removal to Ecuador is unlikely to happen in the reasonably foreseeable future.

The Petition would also fail even if it were to be considered under the four-factor balancing test for adjudicating as-applied due process challenges under *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020). The *German Santos* factors are: (1) the duration of detention, (2) the likelihood that detention will continue, (3) the reasons for the delay, and (4) whether the conditions of confinement are meaningfully different from criminal punishment. *Id.* at 211-12.

The first and "most important" factor for the habeas court to consider is the "duration of detention." *Id.* at 211. Although the *German Santos* court refused to adopt a presumption of reasonableness of any specific duration, it recognized that the petitioner's two-and-a-half-year detention was "five times longer than the six months that [the Supreme Court in *Demore v. Kim*, 538 U.S. 510 (2003)] upheld as only 'somewhat longer than average.'" *Id.* at 211, 212. Petitioner has been detained for a little over seven months. In *A.L. v. Oddo*, 761 F. Supp. 3d 822, 826 (W.D. Pa. 2025), this Court noted that detention "without a bond hearing for nearly ten months" was "within the range where courts have held that delays *start to become unreasonable*." (emphasis supplied). In *Yirenkyi v. Hoover*, No. 3:25CV2414, 2026 WL 268230, at *4 (M.D. Pa. Feb. 2, 2026), the district court found that "because 9.5 months [was] less than the periods typically found unreasonable in [the Middle District of Pennsylvania] ... the duration factor weigh[ed] against relief at [that] time." *Cf.*

8

*Michelin v. Oddo*, 2023 WL 5044929, at \*5 (W.D. Pa. Aug. 8, 2023) (finding that *German Santos* factors favored relief where post-removal-order detention had continued for 18 months). Petitioner's detention has continued for just over seven months. Under prevailing case law, it falls short of weighing in favor of relief at this time.

The record also does not support a finding that Petitioner's detention is likely to continue. She is the subject of an administratively final removal order. There are no ongoing appeals or other pending proceedings regarding her removability. DHS has identified Ecuador as a country willing to accept Petitioner. This factor therefore also weighs against relief.

The reasons-for-delay factor is neutral. Petitioner remained in detention while her applications for relief were pending. Because Petitioner had the right to contest her removability, the delay attributable to her doing so cannot be counted against her or Respondents.

Finally, the record does not speak to whether the conditions of confinement are meaningfully different from criminal punishment. But even if the Court assumes that detention in the Cambria County Prison does not differ materially from incarceration, this factor alone does not tip the balance enough to grant habeas relief.

C.    Conclusion

For the foregoing reasons, it is recommended that the petition be DISMISSED WITHOUT PREJUDICE. Such a dismissal would not foreclose Petitioner from

9

renewing her claim in the event circumstance change such that she can satisfy the requirements for relief under *Zadvydas*.

III.    NOTICE CONCERNING OBJECTIONS

Petitioner is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge within ten days.  Petitioner is cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

DATED this 3rd day of June, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES
MAGISTRATE JUDGE

10